UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN J. JEPPESEN,

    Plaintiff,                                          Civil Action No. 09-12871

v.                                                 HON. PAUL D. BORMAN
                                                   U.S. District Judge
                                                   HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Martin J. Jeppesen brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on July 20, 2004, alleging disability as of February 5, 2004 (Tr. 61-63). After the initial denial of his claim, Plaintiff requested an administrative hearing, held on February 7, 2007 in Ann Arbor, Michigan (Tr. 231). Administrative Law Judge ("ALJ") Bennett Engelman presided. Plaintiff, represented by James Cmejrek, testified, as did Vocational Expert ("VE") Michele Robb (Tr. 234-251, 251-254). On August 7, 2007, ALJ Engelman found that although Plaintiff was unable to return to his past relevant work, he could perform a limited range of exertionally light work

(Tr. 17-19). On May 26, 2009, the Appeals Council denied review (Tr. 3-6). Plaintiff filed for judicial review of the final decision on July 22, 2009.

## BACKGROUND FACTS

Plaintiff, born March 21, 1959, was age 48 when ALJ Engelman issued his decision (Tr. 19, 61). He graduated from high school and worked previously as a water department foreman (Tr. 66, 101). He alleges disability as a result of a degenerative back condition and high blood pressure (Tr. 96).

### A. Plaintiff's Testimony

Plaintiff, married, testified that his post-high school education was limited to two semesters of college and "some management classes" (Tr. 235). Since the alleged disability onset in February, 2004, Plaintiff reported that he worked one to two days a week for his wife's "handyman business" (Tr. 235). He testified that his past relevant work as a water department foreman required him to oversee the water and sewer mains for an entire community (Tr. 236). He described the foreman job, held between 1998 and 2004 as "[a] lot of field work in the truck" (Tr. 238).

Plaintiff reported that he underwent back surgery in 2002, noting that since then, back pain, radiating into his left leg, rendered him unable to remain in one position for extended periods (Tr. 239-240). On a scale of one to ten, Plaintiff described his pain without medication as a "nine," and with medication, a "five" (Tr. 241). Plaintiff, currently prescribed morphine, Vicodin, cyclobenzaprine, Neurontin, Cymbalta, and a Lidoderm patch, reported that the side effects of drowsiness prevented him from performing his job while medicated (Tr. 243). Plaintiff testified that as a result of a family event, he was currently being treated for depression (Tr. 244).

In response to questioning by his attorney, Plaintiff reported that back pain obliged

him to lie down every two hours (Tr. 245). He indicated that since undergoing surgery for the first time in the late 1980s, he experienced chronic sleep disturbances (Tr. 245-246). He testified that he quit his job in 2004 after back pain made it impossible to fulfill his work obligations (Tr. 246). Plaintiff reported that bi-monthly epidural injections alleviated leg numbness but not back pain (Tr. 248). He concluded his testimony by stating that he currently received a disability pension (Tr. 251).

     **B.**     **Medical Evidence**

     **1. Treating Sources**

In January, 2004, Kimberly J. Stewart, M.D., noted that Plaintiff reported "some relief" from a procedure to remove hardware (Tr. 150). The following month, Dr. Stewart remarked that Plaintiff's pain had recently been exacerbated "after an extended period of immobilization at work" (Tr. 143). She noted that with the help of Vicodin and Flexeril, Plaintiff was "get[ting] a handle on his back pain" (Tr. 143). In May, 2002, Mark H. Falahee, M.D., noting a diagnosis of spinal stenosis, issued a four-week work release (Tr. 127). In March, 2004, Dr. Falahee, noted a July, 2002 "re-do decompression" at L4-L1 (Tr. 122). He advised Plaintiff to relieve his discomfort with anti-inflammatories, narcotics for nighttime use, and exercise (Tr. 123). The same month, Donald Martin, M.D., examined Plaintiff, noting stable symptoms and "mild discomfort" at L4-L5 (Tr. 139). The following month, Dr. Falahee issued a report, stating that Plaintiff was unable to fulfill the job duties of water department foreman, due to the inability to lift more than 30-40 pounds, walk on uneven ground, climb ladders, or perform excessive bending, twisting or turning (Tr. 121, 124). Dr. Falahee found nonetheless that Plaintiff was capable of performing either his current job with modifications or other work (Tr. 121-122). In May, 2004, Dr. Martin opined that Plaintiff was unable to sit, stand or walk for more than ten minutes at a time and was

permanently incapacitated (Tr. 135, 137-138).

June, 2004 treating records show that Plaintiff complained of leg and foot numbness, characterizing his pain level as a "5-7 out of 10" (Tr. 131). Dr. Stewart offered to write a prescription for Vicodin and/or Flexeril (Tr. 131). Also in June, 2004, John W. Chatas, M.D., remarked that Plaintiff experienced improvement from a Lidoderm patch (Tr. 183). Dr. Stewart's September, 2004 treating notes state that Plaintiff's back pain had improved with epidural injections (Tr. 130). The same month, Dr. Chatas observed that Plaintiff experienced temporary relief following a "Racz catheter procedure" (Tr. 155, 184-187). Dr. Chatas' December, 2004 treating notes indicate that bimonthly injections allowed Plaintiff "to maintain a fairly normal level of activity," including hunting (Tr. 191).

In April, 2005, Paul D. Thielking, M.D., conducted a mental health evaluation, noting that Plaintiff was "very depressed" as a result of work-related stresses, a death in the family, and his wife's psychiatric condition (Tr. 172-173). Plaintiff exhibited good insight and judgment (Tr. 174). Dr. Thielking assigned Plaintiff a GAF of 55[1] (Tr. 175). In September, 2005, Dr. Thielking's notes state that Plaintiff, tapering off Cymbalta, showed "[n]o depressive symptoms" (Tr. 177). October, 2005 treating notes indicate that Plaintiff continued to receive good results from bimonthly epidural injections and was "able to return to employment as a handyman" (Tr. 203).

Dr. Chatas' February, 2006 treating notes state that Plaintiff experienced "severe pain" brought about by extended sitting during the deer hunting season (Tr. 207). In August, 2006, physician's assistant Joan Westbrook noted that Plaintiff was "working six days a

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

week with his own company" and "caddying for his son" (Tr. 213). November and December, 2006 notes by Westbrook indicate that Plaintiff continued to work (Tr. 219). In January, 2007, Westbrook suggested that the recent psychiatric hospitalization of Plaintiff's wife was responsible for an exacerbation of back pain (Tr. 224). In February, 2007, Kimberly McCord, M.D., citing her long-term treating relationship with Plaintiff, stated that she supported his application for disability (Tr. 179).

### 2. Non-treating Sources

In October, 2004, S. L. Schuchter, M.D., examined Plaintiff on behalf of the SSA, noting a 20-year history of back problems (Tr. 157). Plaintiff, alleging chronic back pain, reported that he currently took a Lidoderm patch, Neurontin, Vicondin, Lisinopril, Hydrochlorothiazide and Flexeril (Tr. 157). Plaintiff exhibited a normal gait and did not experience problems getting on or off the examining table (Tr. 158). Dr. Schuchter cited imaging studies of the lumbar spine showing minor facetal arthrosis at L4-5 and L2-3 but "no other abnormalities" (Tr. 159).

Later the same month, a Residual Functional Capacity Assessment (physical) performed on behalf of the SSA determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, sit, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 163). Postural limitations consisted of occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs with a preclusion on the climbing of ladders, ropes, and scaffolds (Tr. 164). The Assessment, finding the absence of manipulative, visual, or communicative limitations, also precluded work involving machinery or heights (Tr. 166). The Assessment, concluding that Plaintiff was unable to stand for extended periods due to numbness and pain, noted that his weight "[did] not help the situation" (Tr. 167).

### C. Vocational Expert

VE Michele Robb classified Plaintiff's former work as a water department foreman as skilled at the light exertional level[2] (Tr. 66. 252). The ALJ, citing Dr. Falahee's March, 2004 assessment, posed the following question to the VE, taking into account Plaintiff's age, education and work experience:

> "[L]imited to light work. No excessive bending, twisting or turning, no climbing ladders or walking on uneven ground?"

(Tr. 252). The VE, stating that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"), replied that based on the above limitations, the individual could perform the exertionally light jobs of assembler (20,000 jobs in the regional economy); cashier (59,000); and packer (6,000), adding that if a sit/stand option were added, the numbers would be halved (Tr. 252-253). The VE testified that if the individual had to recline at unpredictable intervals or lacked the ability to stay on task for 90 percent of the workday, all work would be precluded (Tr. 253).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine, status/post lumbar fusion/decompression and major depression, but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 13).

The ALJ concluded that although Plaintiff could not perform his past relevant work,

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

he retained the following Residual Functional Capacity ("RFC"):

> "[T]o perform a significant range of light work activity that does not require lifting and carrying more than thirty and forty pounds. The claimant also requires the ability to alternate between sitting and standing positions at will. In addition, the claimant should avoid work activity that requires repetitive bending, lifting and twisting. The claimant should also avoid work activity that requires climbing ladders of walking on uneven ground"

(Tr. 14). Citing the VE's job number, *supra,* the ALJ found that Plaintiff could work as an assembler, cashier, and packer (Tr. 18).

The ALJ found that Plaintiff's allegations regarding the "intensity, persistence and limiting effects" of his condition were "not entirely credible" (Tr. 17). The ALJ noted that Plaintiff had been placed on disability retirement after his employer was unable to accommodate Dr. Falahee's March, 2004 work restrictions, observing that the physician recommended that Plaintiff pursue conservative treatment (Tr. 14-15).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative

record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence

Plaintiff disputes the ALJ's finding that he could perform light work. *Plaintiff's Brief* at 6-8. He appears to take issue with the VE's finding that he could perform a significant range of work given the fairly stringent postural limitations set forth in the hypothetical question. *Id.* at 6.

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987), sets forth the Sixth Circuit's

requirements for a VE's testimony. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). Because the VE's responses constitute the only evidence supporting a Step Five determination, the hypothetical question must be supported by record evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.).

Plaintiff argues that the hypothetical limitations set forth by the ALJ would preclude most jobs, but does not explain why the VE's job findings of assembler, cashier, or packer were erroneous. In compliance with SSR 00-4p, the VE testified specifically that her job findings were consistent with the DOT (Tr. 253). Because Plaintiff does not explain how the VE's testimony deviated from the DOT, I cannot recommend a remand on this basis. Plaintiff also argues that medication side effects should have been considered in crafting his Residual Functional Capacity, but ignores his own testimony that he did not experience medication side effects (Tr. 242). Plaintiff asserts that his need to lie on a flat surface regularly should have been considered. However, this claim stands at odds with treating notes stating that Plaintiff was able to work full time and "caddy" for his golf-playing son, presumably requiring him to remain standing or walking for two to four hour stretches. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987))("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Likewise, Plaintiff's implied argument that the ALJ failed to discuss Dr. Chatas' findings is without merit. Plaintiff cites *Wilson v. Commissioner of Social Sec*. 378 F.3d 541,

544 (6th Cir. 2004), which holds that in determining the weight accorded to a treating physician, the ALJ must consider "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ's failure to supply "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 547.

At no time did Dr. Chatas' state that Plaintiff was disabled. As such, the ALJ would be unable to give "good reasons" for rejecting a non-existent disability opinion. Further, in compliance with 20 C.F.R. § 404.1527(d)(2), the ALJ explained his reasons for rejecting Dr. McCord's February, 2007 opinion that Plaintiff was disabled by noting that it contradicted Dr. Falahee's detailed March, 2004 assessment as well as imaging studies showing mild limitations[3] (Tr. 15-16).

On a related note, Plaintiff, contending that his condition has deteriorated since March, 2004, argues that the ALJ ignored recent treatment records supporting his claim. However, the ALJ was not required to discuss every scrap of evidence supporting Plaintiff's disability claim in light of substantial evidence supporting the opposite conclusion. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner*

---

[3] Plaintiff makes no mention of a May, 2004 opinion that he was unable to sit, stand or walk for more than ten minutes at a time and was permanently incapacitated (Tr. 135, 137-138). Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). In any case, it is unclear whether the author of the May, 2004 opinion, Dr. Martin, was a "treating" source. Filling in for Dr. Stewart, Dr. Martin saw Plaintiff on only one occasion prior to making the "disability" finding (Tr. 139).

*of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

In addition, the ALJ's finding that Plaintiff's condition has remained stable or improved since March, 2004 is amply supported by the record. The ALJ found as follows:

> "The remainder of the treatment record reveals that the claimant's pain symptoms continue to be treated with conservative measures, such as pain medication, home exercise and injection therapy. However, as discussed above, objective studies fail to document evidence of any significant decline in the claimant's lower back condition. Furthermore, no additional surgery has been proposed or performed"

(Tr. 15).

If anything, the ALJ's summation of the latter records is a gross understatement of Plaintiff's residual abilities. December, 2004 treating notes indicate that Plaintiff felt well enough to hunt (Tr. 191). Although Plaintiff alleged at the hearing that he was unable to sit for long periods, February, 2006 treating notes state that he engaged in extended sitting during the 2005 deer hunting season (Tr. 207). Treating notes created six months before the administrative hearing, stating that Plaintiff was "working six days a week with his own company" and "caddying for his son," flatly contradict Plaintiff's February, 2007 testimony that he worked for his wife's handyman business one to two days a week (Tr. 213, 236).

Notwithstanding the ALJ's Step One finding that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 13), transcript evidence showing that Plaintiff was working full time as he continued to pursue a claim for disability benefits is of great concern (Tr. 213). Needless to say, the ALJ's Step Five finding that Plaintiff was not disabled from all work falls squarely within the "zone of choice" accorded to the fact-finder at the administrative level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

# CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 27, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys

and/or parties of record by electronic means or U.S. Mail on May 27, 2010.

                                                s/Gina Wilson
                                                Judicial Assistant